UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TERRI LEA,**<br><br>Plaintiff,<br><br>v.<br><br>**DISTRICT OF COLUMBIA,** *et al.*,<br><br>Defendants. | Civil Action No. 22-1396 (JEB) |

## MEMORANDUM OPINION

Plaintiff Terri Lea had an offer for a General Counsel position in the D.C. government — until she didn't. Two weeks after extending her that offer, the District revoked it based on a finding that Lea was not "suitable" for the position. Since then, she has applied for other legal jobs in the D.C. government but to no avail. She submits that the unsuitability determination, which is memorialized in her personnel file, is a scarlet letter that has and will continue to bar her from finding government employment. She has thus brought this suit against the District and individual government employees involved in her hiring process, alleging that they violated her constitutional right to due process by tarnishing her reputation without a proper hearing, and that they are liable for negligent misrepresentation in connection with her offer letter. Defendants now move to dismiss. As one of Plaintiff's constitutional theories is infirm, the Court will grant the Motion in part, but permit the remainder of her suit to move forward.

**I.   Background**

The following facts come from the Amended Complaint, which the Court must presume to be true at this stage of the litigation. In November 2017, Lea applied for the position of

1

General Counsel for the District of Columbia's Department of For-Hire Vehicles (DFHV). See ECF No. 1-3 (Am. Compl.), ¶ 9. After completing a questionnaire, a personality test, and several rounds of interviews (including one with then-Department Director Ernest Chrappah), id., ¶¶ 10–17, Lea was informed that she had been selected for the position. Id., ¶ 17.

On March 15, 2018, Plaintiff received a formal offer in a letter signed by Ventris C. Gibson, the Director of the District's Department of Human Resources (DCHR). Id., ¶¶ 20–21. The offer was contingent on Lea's completion of criminal-background and consumer-credit checks and on her compliance with a D.C.-residency requirement. Id., ¶ 22. She accepted her offer that same day. Id., ¶ 23. Lea then resigned from her old job and relinquished her lease in Maryland so she could move to D.C, id., ¶ 26, and she prepared the necessary documentation to complete the background and credit checks. Id., ¶ 27.

But hold on. Two weeks after extending the offer, the government rescinded it. Id., ¶ 28. According to its letter of revocation, the District had determined that she was "not suitable for the position." Id., ¶¶ 28, 32. The city based that determination on Lea's prior suspension from the D.C. Bar. See ECF No. 8-2 (Revocation Letter). Lea was then afforded an opportunity to go through a paper appeal process but received no "proper, fundamental name clearing hearing." Am. Compl., ¶¶ 35–36. On June 8, 2018, she received a final notice of revocation, which reiterated that she was "unsuitable for employment as a General Counsel." Id., ¶ 37. The assessment of her suitability was eventually "memorialized and put in [Lea's] personnel file," which DCHR maintained. Id., ¶ 61. Plaintiff alleges that her file became available to "all future D.C. government agency personnel officials and prospective hiring decision makers throughout the [D.C.] government." Id., ¶ 62.

Lea has since applied to numerous legal positions in the D.C. government but has received no interview invitations, much less a job offer. Id., ¶¶ 38, 40. She claims that she is "foreclosed" from a legal career in D.C. government, and that she has been "automatically determined to be 'unsuitable' and disqualified for any such positions." Id., ¶ 41.

To obtain relief from this bar, Plaintiff filed this lawsuit in D.C. Superior Court in September 2020, see ECF No. 1-2 (Original Compl.), naming the District of Columbia, Ventris Gibson, Ernest Chrappah, and Ronald Ross (then-Director of the Mayor's Office of Legal Counsel) as Defendants. Id. They have since removed it to federal court. See ECF No. 1 (Notice of Removal). The Amended Complaint asserts three counts. The first two allege violations of her constitutional right to due process under reputation-plus and stigma-plus theories. Count I seeks injunctive and declaratory relief, while Count II pursues damages under 18 U.S.C. § 1983. See Am. Compl., ¶¶ 42–67. The third count alleges negligent misrepresentation in relation to her offer of employment. Id., ¶¶ 68–84.

Defendants now move to dismiss Lea's Complaint for failure to state a claim; in the alternative, they ask for summary judgment. See ECF No. 8 (Def. MTD).

**II.     Legal Standard**

Because none of Defendants' dispositive arguments turns on evidence outside of the four corners of the Complaint, the Court will apply only the standard for a motion to dismiss at this stage. Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief may be granted. In evaluating such a motion to dismiss, courts must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C.

Cir. 1979)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570) — that is, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  A court need not accept as true, then, "a legal conclusion couched as a factual allegation," Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)), nor "inferences . . . unsupported by the facts set out in the complaint."  Id. (quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  And it may consider not only "the facts alleged in the complaint," but also "any documents either attached to or incorporated in the complaint[,] and matters of which [courts] may take judicial notice."  Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**III.   Analysis**

Defendants' Motion seeks an across-the-board dismissal.  The Court begins with their assertion that Plaintiff's claims are barred as untimely.  It then considers the federal causes of action in Counts I and II before looking at the state claim alleged in Count III.

   A.   Statute of Limitations

Defendants first submit that Lea's § 1983 claims are barred by a one-year statute of limitations.  See Def. MTD at 11.  There is no dispute that she filed her Complaint more than a year after her job offer was revoked, but she rejoins that the relevant limitations period is three years, not one.  The Court agrees, given the clear law articulated by our Circuit.

4

"[T]he appropriate statute of limitations for a claim brought under section 1983 'is that which the State provides for personal-injury torts.'" Earle v. Dist. of Columbia, 707 F.3d 299, 305 (D.C. Cir. 2012) (quoting Wallace v. Kato, 549 U.S. 384, 387 (2007)). And "where state law provides multiple statutes of limitations for personal injury actions, courts . . . should borrow the general or residual statute for personal injury actions." Owens v. Okure, 488 U.S. 235, 249–50 (1989). "The District has two statutes of limitations applicable to tort claims: a one-year statute governing enumerated intentional torts, D.C. Code § 12–301(4), and a three-year residual statute covering all other tort actions. Id. § 12–301(8). We apply the three-year residual statute of limitations to a section 1983 claim." Earle, 707 F.3d at 305; see also Owens, 488 U.S. at 247 n.10 (citing D.C. Code § 12–301(8) as a "residual statute of limitations").

Plaintiff filed her initial Complaint roughly two years and five months after the District revoked her job offer — comfortably within the three-year statute. See Original Compl. at 1 (filing date September 14, 2020); Am. Compl., ¶ 28 (offer rescinded March 29, 2018). Her suit is thus not untimely.

B.  Section 1983 Claims

That threshold question answered, the Court now moves to the more complicated issue of the merits of Lea's federal causes of action. The factual basis for her § 1983 claims is easy to grasp: she submits that the District's failure to hire her, coupled with its assessment that she was not "suitable" for the General Counsel role, besmirched her name and thus prevented her from securing any employment in the D.C. government. See Am. Compl., ¶¶ 51–67. The legal validity of her position that the District, in so doing, violated a constitutionally protected liberty interest is less straightforward. A review of the legal standards underpinning those causes of action is a good place to start.

5

To state a claim for the denial of procedural due process, which is what Lea maintains here, "a plaintiff must allege that [(1)] the government deprived her of a liberty or property interest to which she had a legitimate claim of entitlement, and [(2)] that the procedures attendant upon that deprivation were constitutionally [in]sufficient." New Vision Photography Program, Inc. v. Dist. of Columbia, 54 F. Supp. 3d 12, 28 (D.D.C. 2014) (citation and internal quotations omitted).

The Supreme Court has recognized a constitutional liberty interest in one's reputation. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972) ("[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," that person's liberty interest is on the line, meaning that "notice and an opportunity to be heard are essential.") (internal quotations and citation omitted).  But not every stigma or reputational harm will sustain a due-process claim — there must also be a "plus" factor that takes the injury from merely reputational to constitutional.  In this Circuit, at least, a plaintiff may take one of two paths to establish a reputation-based due-process violation.  See Hutchinson v. CIA, 393 F.3d 226, 231 (D.C. Cir. 2005).

The first, commonly called a "reputation-plus" claim, requires "the conjunction of official defamation and [an] adverse employment action." O'Donnell v. Barry, 148 F.3d 1126, 1140 (D.C. Cir. 1998).  "For a defamation to give rise to a right to procedural due process, it is necessary . . . that the defamation be accompanied by a discharge from government employment or at least a demotion in rank and pay." Mosrie v. Barry, 718 F.2d 1151, 1161 (D.C. Cir. 1983).

The second option is to assert a "stigma-plus" theory.  That theory also requires alleging an adverse official action, but it "differs from . . . [reputation-plus] in that it does not depend on official speech, but on a continuing stigma or disability arising from" that action. O'Donnell,

6

148 F.3d at 1140.  To bring a claim under the stigma-plus theory, a "plaintiff must show not only that the government has imposed some stigma upon [her], but also that it has worked some change in [her] status under law."  Taylor v. Resol. Tr. Corp., 56 F.3d 1497, 1506 (D.C. Cir. 1995).  In this Circuit, there are two ways to demonstrate that required change in status.  Id. First, a plaintiff may show that the government's action "formally or automatically excludes" her from government employment opportunities.  Kartseva v. Dep't of State, 37 F.3d 1524, 1528 (D.C. Cir. 1994).  Alternatively, even if the government action does not have a "binding effect," a plaintiff may demonstrate that the action precludes her from such a broad range of opportunities that it "interferes with [her] constitutionally protected right to follow a chosen trade or profession."  Id. at 1528–29 (citations and internal quotations omitted).

While her Complaint is not a model of clarity on this front, Lea appears to assert due-process violations under both theories.  The Court considers each in turn.

 1. *Reputation Plus*

Defendants contend that Lea's reputation-plus claim is deficient because "the District government never employed [Lea], . . . [so] she had no position to lose or demotion to bear."  See Def. MTD at 12.  They are correct.

Recall that defamation gives rise to a procedural-due-process claim only if it is "accompanied by a discharge from government employment or at least a demotion in rank and pay."  Mosrie, 718 F.2d at 1161; cf. Sciolino v. City of Newport News, 480 F.3d 642, 646 (4th Cir. 2007) (identifying similar rule in Fourth Circuit).  Plaintiff's Complaint, however, alleges neither a discharge nor a demotion in rank and pay.  That is entirely unsurprising, given that Lea had no preexisting government position from which to be discharged or demoted.  Under Circuit precedent, therefore, even assuming that Plaintiff had plausibly alleged government defamation

7

(Defendants submit that she did not), she is out of luck. See Croddy v. FBI, No. 00-651, 2006 WL 2844261, at *3 (D.D.C. Sept. 29, 2006) ("Even accepting Plaintiffs' characterization of Defendants' actions as revoking conditional offers of employment, those actions constitute neither a discharge nor demotion from an employment position. Therefore, Plaintiffs have not demonstrated the loss of a liberty interest under the 'reputation-plus' theory.")

Lea might have argued that the government's refusal to hire her was effectively equivalent to a discharge or demotion. Mosrie, 718 F.2d at 1161. Even had she done so, the Court would not be inclined to expand the scope of a reputation-plus claim to include defamation in the course of a failure to hire. For one, Lea's claim does not comport with the principle underlying reputation-based claims that "a constitutionally recognized liberty interest depends on the existence of a special, tangible relationship between the government and the individual." Doe v. Dep't of Justice, 753 F.2d 1092, 1106 (D.C. Cir. 1985). As a prospective applicant for government employment, she has yet to establish such a relationship.

The D.C. Circuit's rationales for imposing a discharge-or-demotion limitation (expressed in its decision in O'Donnell) also militate in favor of the Court's approach. First, the Circuit there noted that the "conceptual basis for reputation-plus claims" is presumably that "official criticism will carry much more weight if the person criticized is at the same time demoted or fired." O'Donnell, 148 F.3d at 1140. It accordingly held that "[a] lateral transfer, even to a job that is regarded as a 'dumping ground,' cannot form the basis of a reputation-plus claim." Id. Lea would thus have to show here that official criticism issued in conjunction with a failure to hire carries more weight than the same criticism meted out to an existing employee in conjunction with his lateral transfer to a "dumping ground." Id. That conclusion is not self-evident, yet Plaintiff offers no support for it.

8

The second justification from O'Donnell similarly suggests that defamation in the course of a refusal to hire cannot form the basis of a reputation-plus claim. The court explained: "Requiring a demotion or firing to trigger a defamation claim . . . helps to limit the scope of permissible due process claims to a small set of truly serious claims, thus limiting the constitutionalization of tort law." O'Donnell, 148 F.3d at 1140. Expanding reputation-plus claims to circumstances such as these would undermine that goal. Permitting claims from people like Lea would considerably expand the pool of plaintiffs to potential government employees, not just current and former ones. That cannot be what the O'Donnell court intended when it sought to limit due-process claims to "a small set of truly serious" ones. Id.

The Court thus concludes that because Lea has not alleged a discharge or at least a demotion in rank or pay, she has failed to state a due-process claim based on the reputation-plus theory. The Court will dismiss Counts I and II to the extent that they rely on that theory.

    2. *Stigma Plus*

Lea still has cards to play, as she also asserts a claim under the stigma-plus theory. Seeking dismissal of this basis for Counts I and II as well, Defendants point to two alleged deficiencies.

First, apparently assuming that stigma-plus claims are limited in the same way as reputation-plus ones, Defendants repeat their argument that Lea alleged neither a discharge nor a demotion. See MTD at 13–14. The Court is not so sure that the theories are so closely linked.

To begin, the D.C. Circuit has articulated the discharge-or-demotion rule only in the context of reputation-plus claims. See Mosrie, 718 F.2d at 1161–62 (noting that, to allege what is now labeled a reputation-plus claim, "it is necessary . . . that the defamation be accompanied by a discharge . . . or at least a demotion"); O'Donnell, 148 F.3d at 1140; see also Croddy, 2006

9

WL 2844261, at *3 n.3 (noting that cases suggesting that "job applicants have the same due process rights as employees . . . are inapposite [to reputation-plus claims]. . . because they discuss 'stigma or disability'-type due process claims"). To be sure, opinions from this Circuit state that both claims require plaintiffs to allege an "adverse employment action." O'Donnell, 148 F.3d at 1140. But when it discusses the stigma-plus standard, the Circuit uses more capacious language interchangeably with "adverse employment action," including the phrases "official action" and "[g]overnment action." See, e.g., O'Donnell, 148 F.3d at 1140–41. In any event, the same term can have different legal meanings in different contexts, cf. Env't Def. v. Duke Energy Corp., 549 U.S. 561, 574 (2007) ("[M]ost words have different shades of meaning and consequently may be variously construed.") (citation and internal quotations omitted), and this Court cannot ignore the fact that the Circuit has repeatedly narrowed the category of "adverse employment actions" in the reputation-plus context without explicitly doing the same in the stigma-plus context.

The Circuit has also permitted due-process claims to go forward on a stigma-plus theory even when there was no official government discharge or demotion. Consider Kartseva, 37 F.3d 1524, in which the Court of Appeals elaborated on the stigma-plus doctrine. Zhanna Kartseva, a Russian language instructor and translator by trade, performed government-contract work for the Department of State as an employee of a private company, Statistica. Id. at 1525. In the course of her contract work, Kartseva failed a government background check, was deemed "unsuitable for further DOS contract performance," and was fired by Statistica based on that determination. Id. at 1526–28. On those facts, the court found that Kartseva had plausibly alleged a violation of her liberty interest under the stigma-plus theory. Id. at 1527. To be sure, Kartseva was discharged by someone (her private employer). That was merely a consequence, though, of the

10

relevant government action, which was not a discharge or a demotion but rather the State Department's alleged "disqualification" of Kartseva from certain government contract work. Id. at 1528; see also O'Donnell, 148 F.3d at 1141 (describing the relevant employment action in Kartseva as the "denial" of her security clearance). Lea would contend that she, like Kartseva, was "disqualified" from certain government work because the government labeled her as "unsuitable" and declined to hire her.

Applying the discharge-or-demotion rule to reputation-plus but not to stigma-plus claims also aligns with the reasoning in O'Donnell. Recall that court's explanation that requiring discharges or demotions in the reputation-plus context limits such claims to those alleging the most serious consequences for employees and thus cabins the universe of constitutional torts. See O'Donnell, 148 F.3d at 1140. As compared to reputation-plus, the stigma-plus theory is in much lesser need of an external constraint. That is because the latter is naturally limited to situations with grave employment ramifications, given the requirement that a plaintiff show that the government stigma "seriously affected, if not destroyed" her ability to pursue her chosen profession in order to state a claim. See Kartseva, 37 F.3d at 1529 (quoting Greene v. McElroy, 360 U.S. 474, 492 (1959)) (emphasis added); cf. Doe, 753 F.2d at 1106–12 (suggesting that "plus" factor in liberty-interest due-process claim could be discharge or "foreclosure of future government employment opportunities," id. at 1106, though ultimately appearing to blend the reputation-plus and stigma-plus inquiries, id. at 1112). In contrast with a reputation-plus claim, a properly pled stigma-plus claim will thus allege significant employment consequences — a change in "status under law" — regardless of the nature of the official action that triggered those consequences. See Kartseva, 37 F.3d at 1527; Garcia v. Pompeo, No. 18-1822, 2020 WL

134865, at *6 (D.D.C. Jan. 13, 2020); but see O'Donnell, 148 F.3d at 1141 (appearing to describe change-in-status requirement as limiting nature of relevant employment action).

Defendants' first objection thus falls flat. It is enough, at least for purposes of the stigma-plus claim, that Lea alleged a "certain adverse [government] action" — the refusal to hire her due to her unsuitability — that imposed a stigma on her. Campbell v. District of Columbia, 894 F.3d 281, 288 (D.C. Cir. 2018).

Second, Defendants suggest that because Lea faced nothing more than "difficulty in obtaining a job in a particular field," she has failed to satisfy the second requirement of a stigma-plus claim. See Def. MTD at 14. Defendants have the law correct: a stigma-plus claim cannot survive a motion to dismiss on the theory that a government action led to mere difficulty finding a job. The Complaint must allege that the plaintiff has been effectively "foreclosed" from some category of work. Campbell, 894 F.3d at 288–89.

This it sufficiently does, albeit in a rather conclusory fashion. Lea alleges that after the government deemed her unsuitable for the General Counsel position, she was "completely foreclosed" from "any real prospect of pursuing employment with the District of Columbia government." Am. Compl., ¶ 65. She applied to numerous jobs in the government but was offered no interviews. Id., ¶ 39. Instead, Lea submits, she was "automatically determined to be 'unsuitable' and disqualified for any such positions." Id., ¶ 41. At this stage, the Court must treat those factual allegations from the Complaint as true and grant Lea "the benefit of all inferences that can be derived from [them]." Sparrow, 216 F.3d at 1113 (citations and internal quotations omitted). Thus construed, the allegations sufficiently establish that the government's failure to hire Lea "'formally or automatically exclude[d]' her" from legal positions in the D.C. government. Campbell, 849 F.3d at 289 (quoting Kartseva, 37 F.3d at 1528).

12

3. *Qualified Immunity*

Finally, the individual Defendants assert that they are entitled to qualified immunity. That defense goes nowhere because Lea disavows the assumption on which it is based.

The doctrine of qualified immunity shields government officials from suit under § 1983 so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999) (citations and internal quotations omitted). Lea submits that the doctrine does not apply here because "there are no Section 1983 claims against the individual defendants." ECF No. 10 (Pl. Reply), ¶ 9.

The Complaint confirms that assertion. Count II, which contains the § 1983 claims, names only the District of Columbia as a defendant. See Am. Compl. at 8. Count I, on the other hand, does name individuals as defendants. See id. at 7. Unlike Count II, however, it does not invoke § 1983 as its vehicle. See id. at 8 (seeking only declaratory and injunctive relief, and not relying on § 1983, though invoking same constitutional theories underlying Count II). Because there are no § 1983 claims against the individual Defendants, the qualified-immunity defense is inapplicable to this case.

C. Negligent Misrepresentation

Last up is Count III for negligent misrepresentation under D.C. law. To state such a claim, a plaintiff must show "(1) that [the defendant] made a false statement or omitted a fact that he had a duty to disclose; (2) that it involved a material issue; and (3) that [the plaintiff] reasonably relied upon the false statement or omission to [her] detriment." Sundberg v. TTR Realty, LLC, 109 A.3d 1123, 1131 (D.C. 2015) (citations and internal quotations omitted). The

13

Court first assesses the facial sufficiency of this count and then considers Defendants' suggestion that individual Defendants should be dismissed.

1. *Facial Sufficiency*

Lea alleges that Defendants omitted a material fact about her offer upon which she relied to her detriment. In their offer letter, Defendants stated that she would be required to pass a criminal-background check and consumer-credit check, but they mentioned "no further contingencies or conditions" and made no reference to a "suitability" screening. See Am. Compl., ¶¶ 72, 76. Lea alleges that she then relied upon that omission: she resigned from her old job, relinquished her lease in Maryland, and sought a new lease in the District of Columbia (a condition of her offer). Id., ¶ 74. When the offer was revoked, she was left with a new home in a new city — and no job.

Defendants submit several grounds for dismissing the count, but each appears to misunderstand the nature of Plaintiff's claim. For one, Lea is not alleging, as Defendants suggest, that the "unsuitability" determination is the misrepresentation that triggered her claim. See MTD at 16. Rather, she seeks to hold Defendants liable for declining to disclose that a suitability finding was a condition of her employment offer. See Am. Compl., ¶ 72. The veracity of the unsuitability determination is irrelevant to that question.

Next, Defendants assert that what Plaintiff is really saying "is that if she had known that Defendants were going to discover . . . her run-ins with the DC Bar, information she chose to conceal, she would not have burned her own plank by acting precipitously before she had a final job offer in hand." MTD at 16. To the extent that this description contains the argument that Lea should have anticipated an eventual revocation of her offer because she knew of her own previous "run-ins" with the DC Bar, that position misses the mark. Whatever her own

14

expectations, Plaintiff plausibly alleged that once she received the offer letter, she reasonably relied on the representations therein. That letter made no mention of "suitability" and thus gave no indication that she should anticipate that those "run-ins" would affect her candidacy (particularly given that she was "in good standing" and "fit to practice law" in D.C. at the time, see Am. Compl., ¶ 60).

Finally, Defendants contend that "Plaintiff appears to believe that her conditional job offer was irrevocable," and that "[a]s a lawyer, Plaintiff of all people, should have known that 'conditional'" meant the opposite of irrevocable. See MTD at 16–17. That argument talks right past Lea's claim. She plainly concedes that her offer was revocable, but she also asserts that Defendants, by including certain contingencies in her offer letter but not others, led her to believe — mistakenly, it turned out — that her offer was revocable on more limited grounds than was ultimately the case. See Am. Compl., ¶ 73. A complete account of the grounds for revocation, and not the revocability itself, she submits, was the key omission.

As Defendants' contentions largely leave Plaintiff's negligent-misrepresentation claim untouched, the Court will deny the Motion as to Count III.

2. *Proper Defendants*

Defendants also urge the Court to dismiss the individual Defendants from this cause of action. See MTD at 15. They assert that because those individuals "were acting within the scope of their authority as District officials, . . . [Lea's] claims are official capacity claims for which they cannot be found individually liable." Id. To the extent that this argument turns on the capacity in which Defendants were sued, Lea has a response: the individual Defendants "were sued in the[ir] individual capacity." Pl. Reply, ¶ 15. Although the accuracy of that assertion is less than clear from the Complaint (see Am. Compl. at 1 (listing in caption that

15

Ronald R. Ross is a defendant "[i]n his individual capacity" but not including that specification for other individual Defendants)), Defendants make no attempt to dispel that notion beyond a conclusory assertion in their Motion. See MTD at 15. The Court therefore accepts Lea's characterization of her Amended Complaint at this stage in the proceedings.

Defendants may mean to argue that Lea's suit must be an official-capacity suit not because of how it was pled, but because the individual Defendants acted within the scope of their official authority. To the extent that this is the case, the argument is too underdeveloped for the court to consider at this stage. See, e.g., Robinson v. Farley, 264 F. Supp. 3d 154, 162 (D.D.C. 2017) ("This Court need not, and will not, address undeveloped arguments for dismissal."). Defendants provide no relevant legal authority elucidating the relationship between an officer's scope of authority and individual-capacity suits. They point to nothing but a case describing the difference between individual- and official-capacity suits in the § 1983 context, which is not only inapposite to an assessment of a state-tort claim, but also makes no reference to scope of authority. See Kentucky v. Graham, 473 U.S. 159 (1985).

Defendants' attempt to extricate the individual Defendants from Count III does not succeed.

### IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss will be granted in part and denied in part. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 8, 2022