UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TERRI LEA, <br><br> Plaintiff, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br><br> Defendant. | Civil Action No. 22-1396 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Terri Lea had an offer for a General Counsel position in the D.C. government. That is, until her prospective employer learned that she had previously been suspended from the D.C. Bar. As a result, two weeks after extending her an offer, the District understandably reneged. Since then, Lea has applied for other legal jobs in the D.C. government but to no avail. According to her, the District memorialized an adverse suitability determination in her personnel file, marking her with a scarlet letter that has and will continue to bar her from finding government employment. She thus brought this suit against the District and certain city employees involved in her hiring process, alleging that they violated her constitutional right to due process by tarnishing her reputation without a proper hearing, and that they are liable for negligent misrepresentation in connection with her offer letter.

This Court having dismissed one of Lea's federal counts at the motion-to-dismiss stage, these Defendants now seek summary judgment. Although they offer myriad arguments in support of their Motion, the Court need only consider one: that Lea has failed to present any evidence that her unsuitability rating kept her from other D.C. government jobs, a necessary

1

requirement for alleging a violation of a constitutionally protected liberty interest via a stigma-plus theory of reputational injury. With the record evidence against her, the Court will thus grant Defendants' Motion on Lea's federal cause of action and decline to exercise supplemental jurisdiction over her D.C.-based claim.

**I.     Background**

Although the parties have filed Cross-Motions for Summary Judgment, because the Court ultimately focuses on Defendant's Motion, it will construe the facts in the light most favorable to Plaintiff. See Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011).

   A.   Factual Background

In November 2017, Lea applied for the position of General Counsel for the District of Columbia's Department of For-Hire Vehicles (DFHV). See ECF No. 25-1 (Def. SUMF), ¶ 1; ECF No. 26-1 (Pl. Counter SUMF) at 1. After completing a questionnaire, a personality test, and several rounds of interviews, she was informed that she had been selected for the position. See Def. SUMF, ¶ 2; ECF No. 27-2 (Pl. SUMF), ¶ 9; ECF No. 1-3 (Am. Compl.), ¶¶ 12, 17.

On March 15, 2018, Plaintiff received a formal offer in a letter signed by Ventris C. Gibson, the Director of the District's Department of Human Resources (DCHR). See ECF No. 30, Exh. 3 (Gibson Offer Letter); Def. SUMF, ¶ 3. The offer was contingent on Lea's completion of criminal-background and consumer-credit checks and on her compliance with a D.C.-residency requirement. See Gibson Offer Letter at 1. She accepted her offer that same day. See ECF No. 30, Exh. 4 (Lea Acceptance). Lea then claims that she resigned from her old job and relinquished her lease in Maryland so she could move to D.C. — though Defendants question both assertions, neither is material here, see Am. Compl., ¶¶ 24, 26; ECF No. 25 (Def. MSJ) at 19–20; ECF No. 26 (Pl. Opp.) at 11 — and she prepared the necessary documentation to

complete the background and credit checks.  See Am. Compl., ¶ 27.

Two weeks after extending the offer, however, the District revoked it.  See ECF No. 25-2, Exh. 2 (Initial Revocation Letter) at 1; Def. SUMF, ¶ 4; Pl. Counter SUMF, ¶ 4.  According to its letter of revocation, the District had determined that she was "not suitable for the position." See Initial Revocation Letter at 2.  The city based that determination on Lea's prior suspension from the D.C. Bar.  Id. at 1-2; Def. SUMF, ¶¶ 5–7; Pl. Counter SUMF, ¶¶ 5–7.  Lea was then given ten days to clarify any derogatory information revealed during her suitability screening. See Initial Revocation Letter at 2.  She thereafter filed a written appeal that included her Petition for Reinstatement to the D.C. Bar.  See Def. SUMF, ¶ 9; Pl. Counter SUMF, ¶ 9.  On June 8, 2018, she received a final notice of revocation, which reiterated that she was "unsuitable for employment as a General Counsel."  See ECF No. 25-2, Exh. L (Final Revocation Letter) at 1.

The parties dispute the consequences of this missed opportunity.  Lea alleged in her Amended Complaint that her unsuitability assessment was eventually "memorialized and put in [her] personnel file," which DCHR maintained.  See Am. Compl., ¶ 61.  She alleged that this file then became available to "all future D.C. government agency personnel officials and prospective hiring decision makers throughout the [D.C.] government."  Id., ¶ 62.  Following the District's revocation of her initial employment offer, she alleges that she has applied to numerous legal positions in the D.C. government but has received no interview invitations, much less a job offer. Id., ¶¶ 38, 40.  All this occurred, she contends, because that initial unsuitability assessment marked her with a scarlet letter, "foreclos[ing]" her from a legal career in D.C. government because in every future application she submits she would be "automatically determined to be 'unsuitable' and disqualified for any such positions."  Id., ¶ 41; see also Pl. Opp., ¶ 18.  While these are serious allegations, a central question on this Motion is whether record evidence

supports them. Indeed, Defendants disclaim the existence of any sort of applicant blacklist and dispute that DCHR retained or shared Lea's unsuitability rating with any other District office. See Def. SUMF, ¶¶ 16–19; Pl. Opp., ¶¶ 17–18.

> B. Procedural Background

Plaintiff filed this lawsuit in D.C. Superior Court in September 2020, see ECF No. 1-2 (Original Compl.), naming the District of Columbia, Ventris Gibson, Ernest Chrappah, and Ronald Ross (then-Director of the Mayor's Office of Legal Counsel) as Defendants. Id. They then removed it to federal court. See ECF No. 1 (Notice of Removal). The Amended Complaint asserted three counts: the first two were § 1983 claims that alleged violations of her constitutional right to due process under reputation-plus and stigma-plus theories, and the last was a D.C.-law claim alleging negligent misrepresentation in relation to her offer of employment. Id., ¶¶ 42–87. Defendants moved to dismiss the Complaint or, in the alternative, for summary judgment. See ECF No. 8 (Def. MTD). This Court granted that Motion in part, dismissing the reputation-plus component of her § 1983 count because she had not alleged a discharge or demotion in rank and pay as required for such a claim. See Lea v. District of Columbia, No. 22-1396, 2022 WL 3153828, at *4 (D.D.C. Aug. 8, 2022). Now, with discovery complete, the parties cross-move for summary judgment on what remains.

**II.   Legal Standard**

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at

895.  A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*).  The Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-movant, in other words, is required to provide evidence that would permit a reasonable jury to find in his favor.  See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

**III.    Analysis**

The Court begins with Lea's § 1983 stigma-plus claim and then explains why it will not exercise supplemental jurisdiction over the remaining D.C.-law negligent-misrepresentation count.

5

A.  Section 1983 Claim

Lea's sole extant federal cause of action invokes § 1983.  She submits that the District's refusal to hire her, coupled with its assessment that she was "unsuitable" for the General Counsel role, besmirched her name and thus prevented her from securing any employment in the D.C. government.  See Am. Compl., ¶¶ 51–67.  As this Court explained in its previous Opinion, the only legally plausible way that she can support a claim that the District, in making its assessment, violated a constitutionally protected liberty interest is via a stigma-plus theory of reputational injury.  See Lea, 2022 WL 3153828, at *4-5.

The Court recounts the requirements of such a claim and then considers the record evidence to determine whether a triable issue of fact exists on this count.

1.  *Stigma Plus*

To state a claim for the denial of procedural due process, which is what Lea maintains here, "a plaintiff must allege that [(1)] the government deprived her of a liberty or property interest to which she had a legitimate claim of entitlement, and [(2)] that the procedures attendant upon that deprivation were constitutionally [in]sufficient."  New Vision Photography Program, Inc. v. District of Columbia, 54 F. Supp. 3d 12, 28 (D.D.C. 2014) (citation and internal quotations omitted).

The Supreme Court has recognized a constitutional liberty interest in one's reputation. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972) ("[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," that person's liberty interest is on the line, meaning that "notice and an opportunity to be heard are essential.") (internal quotations and citation omitted).  But not every stigma-based or reputational harm will sustain a due-process claim — there must also be a "plus" factor that

6

boosts the injury from merely reputational to constitutional. In this Circuit, at least, a plaintiff may take one of two paths to establish a reputation-based due-process violation. See Hutchinson v. CIA, 393 F.3d 226, 231 (D.C. Cir. 2005).

The one outstanding here is the so-called "stigma-plus" claim. While this theory requires alleging an adverse official action, it differs from the alternative reputation-plus theory of harm — whose applicability to Lea this Court rejected in its previous Opinion, see Lea, 2022 WL 3153828, at *4–5 — "in that it does not depend on official speech, but on a continuing stigma or disability arising from" that action. O'Donnell v. Barry, 148 F.3d 1126, 1140 (D.C. Cir. 1998). To bring a claim under the stigma-plus theory, a "plaintiff must show not only that the government has imposed some stigma upon [her], but also that it has worked some change in [her] status under law." Taylor v. Resol. Tr. Corp., 56 F.3d 1497, 1506 (D.C. Cir. 1995). In this Circuit, there are two ways to demonstrate that required change in status. Id. First, a plaintiff may show that the government's action "formally or automatically excludes" her from government employment opportunities. Kartseva v. Dep't of State, 37 F.3d 1524, 1528 (D.C. Cir. 1994). Alternatively, even if the government action does not have a "binding effect," a plaintiff may demonstrate that the action precludes her from such a broad range of opportunities that it "interferes with [her] constitutionally protected right to follow a chosen trade or profession." Id. at 1528–29 (citations and internal quotations omitted).

    2.    Record Evidence

As to the first test, Plaintiff here has failed to marshal any evidence that the District's unsuitability determination has "formally or automatically exclude[d]" her from future jobs with the city. See Kartseva, 37 F.3d at 1528. Lea contends in her Cross-Motion for Summary Judgment that "[o]ver the last couple of years [she] has applied for a number of positions in the

D.C. government but has gotten [nowhere], a clear sign that she is foreclosed from employment with the District of Columbia government." ECF No. 27 (Pl. MSJ), ¶ 8; Pl. Counter SUMF, ¶ 18. This statement, however, is mere argument and is unsupported by the record.

For example, as the District explains in its Motion, DCHR has no personnel file for Lea. See Def. MSJ, Exh. M (Declaration of Amir Farhangi), ¶ 3; id., Exh. 1 (OPF Search Screenshot). Indeed, DCHR creates Official Personnel Folders (OPFs) only for its employees who have begun working for the District, not for unsuccessful applicants. See Def. MSJ at 12 (citing 6-B DCMR § 3107.1). A search for Lea's name in that database returns no results. See Farhangi Decl., ¶ 3 (noting that a "[a] search for 'Terri Lea' in the DCHR database in which Employee [ID Numbers] are stored yields no results, indicating Ms. Lea was never assigned an Employee ID Number, and has no OPF" file); OPF Search Screenshot at 1 (displaying no matching results for a search of Lea's name); Def. SUMF, ¶ 17. Even when viewed in the light most favorable to her, Lea's allegations that the District maintains and disseminates information about her unsuitability determination for the general counsel position to which she applied, see Pl. Opp. at 21 (suggesting that, even if there are no such records, "[t]hat does not . . . mean that individuals were never asked to provide prior suitability determinations, it only means that they do not have any records of said requests"), are contradicted by the record evidence. In fact, the District has clearly shown that no such records — nor any hypothetical "foreclosure" list of unsuitable employees — exists. See Def. SUMF, ¶ 17; Pl. Opp. at 21 (admitting that such a list may not exist as such).

Lea responds that while the District may not maintain an OPF file associated with her, DCHR nevertheless retains a separate file pertaining to applicants for District employment in a system called PeopleSoft. See Pl. Counter SUMF, ¶ 18; Pl. MSJ at 17. How else, she asks,

8

could the DCHR Associate Director know that she had applied to other job postings with the District?  See ECF No. 38 (Pl. Reply) at 8.  Just because the District maintains application files, however, does not mean that it maintained and shared Lea's unsuitability rating.  In fact, Defendants provide a screenshot of Lea's PeopleSoft entries, which list her applications but do not always list the outcome of her candidacy nor the reason why she was not chosen for a position.  See Def. MSJ, Exh. 3 (PeopleSoft Screenshot).

Even if the evidence cannot support Lea's contention that she is "formally or automatically exclude[d]" from future jobs with the District, Kartseva, 37 F.3d at 1528, she may still prevail if she can demonstrate that the District's action precludes her from such a broad range of opportunities that it "interferes with [her] constitutionally protected right to follow a chosen trade or profession."  Id. at 1528– (citations and internal quotations omitted).  Lea herself suggests that, while the District may not maintain a formal bar against her future employment, "it is not a stretch to believe that de facto processes do exist which effectively foreclose employment opportunities to individuals who are faced with past infractions."  Pl. Counter SUMF, ¶ 17.

Once again, however, this is speculation; the record evidence provides no support for her allegations, which rest entirely upon the assertion that Defendants have failed to show that "such a system does not, in fact, exist."  Id.  As the Court reviewed above, none of the records that the District has produced — including Lea's PeopleSoft entries and her non-existent OPF file — provides any evidence that the initial unsuitability determination has been held by DCHR, much less disseminated to the District's other agencies.  In fact, they show that no such unsuitability determination record exists.  Although this Court previously treated Plaintiff's allegations as true at the motion-to-dismiss stage, the test is sterner now, and she has not advanced her claims

9

beyond the "rather conclusory" allegations stated in her initial Complaint. Lea, 2022 WL 3153828, at *6.

Additionally, the District has shown that of the six additional positions Plaintiff applied to, two were simply withdrawn. See Def. MSJ at 12 (citing Def. SUMF, ¶ 17; PeopleSoft Screenshots). For the other positions she sought, a much more reasonable explanation exists for why Plaintiff was unsuccessful — viz., her original unsuitability finding (her D.C. Bar status) was based on publicly available facts (the D.C. Court of Appeals decisions to suspend her license). Because a stigma-plus claim requires that the "government . . . be the source of the defamatory allegations," Doe v. U.S. Dep't of Just., 753 F.2d 1092, 1108 (D.C. Cir. 1985), any future employer's reliance on the public information concerning Plaintiff's disciplinary history or prior employment — both factors in the District's decision here to revoke her initial offer of employment — cannot support her stigma-plus claim.

The Court thus finds that Lea has not created a dispute of material fact on her stigma-plus claim, and it enters judgment for Defendants on this count.

B. Remaining Counts

With Plaintiff's sole federal claim now gone, this Court lacks subject-matter jurisdiction over her remaining count for negligent misrepresentation, and it will decline to exercise supplemental jurisdiction.

Federal district courts are given supplemental (or "pendent") jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. See 28 U.S.C. § 1367(a). By the same token, they "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" Id. § 1367(c)(3). The decision of whether to exercise

supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); see also Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005). When deciding whether to exercise supplemental jurisdiction over state claims, federal courts should consider "judicial economy, convenience, fairness, and comity." Shekoyan, 409 F.3d at 424 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). When all federal claims are eliminated before trial, however, those factors "will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon, 484 U.S. at 350 n.7; see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (finding the discretion set out in Carnegie-Mellon "unaffected by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990").

These factors weigh against retention here. The Court is dismissing the sole federal claim against Defendants. This case has not progressed in federal court past this Motion for Summary Judgment, and the Court has developed no familiarity with the additional issues presented. Cf. Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370, 378 (D.C. Cir. 2010) (holding that district court appropriately retained pendent jurisdiction over state claims where it had "invested time and resources" in the case). Although dismissal of the remainder of the case without prejudice — so that Plaintiff could file in the "appropriate state court" — is the typical result in these circumstances, this case is somewhat different. Given that it was Defendants who removed the matter here, the fairer course is to remand the case to Superior Court, where Plaintiff may prosecute her local cause of action.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted in part, and the remainder of the case will be remanded to Superior Court. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: July 27, 2023